FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 0 6 2026

KEVIN P. WEIMER, Clerk
By ____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| JENNY LINDSAY, | ) | |
| Plaintiff, | ) | CASE NO 1:22-CV-0886-WMR |
| v | ) | |
| | ) | |
| | ) | |
| EMORY UNIVERSITY, | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF COMBINED MOTION FOR CLARIFICATION AND RECONSIDERATION OF INTERLOCUTORY DISCOVERY RULING

COME NOW JENNY LINDSAY ("Plaintiff"), Pro Se, who, pursuant to Fed. R. Civ. P.  Rule (FRCP) 54(b), Fed. R. Civ. P. 26, 30, and 34, and N.D. Ga. L.R. 7.2(E) and 37.1, makes and files this Memorandum in support of her Motion for Clarification and Reconsideration of the Court's March 9, 2026 oral discovery ruling to the extent that ruling limited or appeared to foreclose discovery into comparator evidence, related circumstantial evidence, and pattern evidence, university-level immigration practices, Plaintiff's own academic and immigration records, targeted personnel-related materials, and depositions necessary to test decision-maker conduct and institutional discretion. Rule 54(b) authorizes revision of interlocutory orders at any time before entry of final judgment, and Local Rule 7.2(E) provides the local procedure for reconsideration motions in this district.

### INTRODUCTION

Plaintiff respectfully requests clarification and reconsideration because the Court's March 9, 2026 oral ruling appears to have restricted discovery into direct

comparator evidence, related circumstantial evidence, and related pattern evidence central to Plaintiff's proof of intentional discrimination, selective enforcement, pretext, deliberate indifference, and institutional pattern. Plaintiff does not file this motion lightly. Plaintiff files it because the present scope of the ruling appears to be outcome-determinative and, unless clarified or corrected, would allow Defendant to withhold the very evidence necessary to test comparator similarity, institutional discretion, unequal treatment, and a convincing pattern / mosaic of intentional discrimination.

This motion concerns an interlocutory discovery ruling, not a final judgment. Under Rule 54(b), interlocutory orders may be revised before final judgment, and Local Rule 7.2(E) recognizes that reconsideration may be necessary where clarification is required to prevent manifest injustice. That need is heightened here because the Court indicated that interlocutory appeal would not be certified, leaving clarification and reconsideration as the practical means to ensure that discovery proceeds on a fair and fully informed basis. The issue is not simply disagreement with the ruling, but uncertainty as to its scope and effect. The restrictions at issue were not the product of adversarial briefing, evidentiary submissions, or a developed record. Rather, they emerged during oral proceedings without argument on several of the categories now treated as excluded. If those limitations are overread by Defendant, Plaintiff risks entering dispositive-motion practice without access to

evidence necessary to test comparator treatment, institutional discretion, pretext, and discriminatory intent.

Plaintiff also seeks clarification regarding depositions. During the March 9, 2026 hearing, the Court stated that Plaintiff did not need depositions, although no noticed deposition motion was before the Court and no explanation accompanied that statement. Clarification is necessary because depositions may be required to identify decision-makers, unwritten criteria, the role of ISSS/DSO personnel, and the extent to which discretion was exercised differently for other students. Finally, clarification is especially important because the Court has emphasized the need for evidentiary support for Plaintiff's allegations under threat of Rule 11 sanctions. Where a party is expected to substantiate claims with evidence, discovery cannot be restricted in a way that prevents access to that evidence before it can be obtained.

**LEGAL STANDARD**
**I.    Rule 54(b) governs reconsideration of interlocutory orders**

Because the ruling at issue is interlocutory, reconsideration is governed principally by Fed. R. Civ. P. 54(b). Under Rule 54(b), district courts retain plenary authority to revise interlocutory orders before final judgment. That authority exists precisely because interlocutory rulings often require adjustment as the factual record develops and as the practical implications of an oral ruling become clearer over time. At the same time, N.D. Ga. L.R. 7.2(E) provides that motions for reconsideration

"shall not be filed as a matter of routine practice" and must be filed within twenty-eight days after entry of the order or judgment. Responses are due within fourteen days. This motion is filed, but because Defendant is using ambiguity in the Court's ruling (Doc. 78) to treat a merits question, whether particular comparators ultimately satisfy Lewis, as though it were a threshold discovery restriction. That sequencing is improper because comparator sufficiency is evaluated at the merits stage, while discovery relevance is governed by Rule 26.

## II.    Discovery is governed by Rules 26, 30, 34, and 37

Rule 26(b)(1) permits discovery of nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case. At this stage, proportionality favors targeted discovery into central issues, including decision-maker conduct, comparator treatment, institutional discretion, and immigration-related practices, so that the record may be meaningfully developed before dispositive motion practice. Early clarification also promotes efficiency by reducing piecemeal disputes and avoiding serial motions to compel.

Rule 26(e) imposes a continuing duty to supplement incomplete responses. Rule 30 permits depositions of parties and witnesses where relevant to the claims or defenses. Rule 34 requires production of responsive documents in usable form. To the extent the Court referenced 'compelling evidence' in connection with any future motion to compel, Plaintiff respectfully understands that standard to refer to

evidence demonstrating the existence, relevance, and nonproduction of responsive materials under Rule 37, not proof of the ultimate merits of her claims. Here, Defendant's own communications, policies, and produced documents already confirm the existence of discretionary practices, comparator-related materials, and institutional decision-making processes. Those materials are sufficient to establish that additional responsive records exist and are discoverable, thereby satisfying the threshold required for Rule 37 relief if necessary.

The Court's standing orders and the Federal Rules contemplate focused, usable, request-linked discovery, not categorical withholding based on premature merits arguments. In fact, Courts must also ensure that discovery management does not undermine fundamental fairness. In *Vining v. Runyon*, 99 F.3d 1056 (11th Cir. 1996), the Eleventh Circuit held that a court may not resolve the merits of a case based on evidence that is not accessible to the opposing party, emphasizing that litigants must have a fair opportunity to access and challenge the evidence used against them. That principle reinforces that discovery cannot be restricted in a manner that deprives a party of access to the very materials necessary to prove her claims. The governing principles are consistent: parties must be afforded a meaningful opportunity to develop the record before adverse rulings are made, see *Snook v. Trust Co. of Georgia Bank*, 859 F.2d 865, 870 (11th Cir. 1988); discovery cannot be curtailed in a manner that deprives a party of access to the evidence

necessary to prove her claims, see *Vining v. Runyon*; and while courts may manage discovery efficiently, that discretion does not extend to foreclosing relevant evidence where claims are viable, see *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997); accord *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

### III. Comparator sufficiency is a Merits Issue; Discovery Relevance is Broader

Under *Lewis v. City of Union City*, a plaintiff relying on comparators must show that they are "similarly situated in all material respects." 918 F.3d 1213, 1224–27 (11th Cir. 2019) (en banc). Further, *Lewis* addresses the comparator requirement at the prima facie stage of the *McDonnell Douglas* framework which mean that it does not require that proposed comparators be identical in every factual detail, and it does not hold that otherwise relevant discovery is unavailable until comparator status has already been proven. Rather, *Lewis* asks whether proposed comparators are sufficiently alike in the respects that matter to the challenged decision.

The later August 2019 *Lewis* panel decision underscores the distinction. Even after concluding that Lewis had not satisfied the comparator standard announced by the en banc court, the panel recognized that this did not necessarily foreclose all circumstantial discrimination theories. See *Lewis v. City of Union City*, No. 15-11362, slip op. at 30–32 (11th Cir. Aug. 15, 2019). Likewise, *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) explains that a plaintiff may survive summary judgment with circumstantial evidence that creates a triable issue

concerning discriminatory intent, and in *Tynes v. Florida Department of Juvenile Justice,* 88 F.4th 939 (11th Cir. 2023), the Eleventh Circuit judges confirmed that the ultimate Rule 56 question is whether the evidence as a whole permits a jury to infer intentional discrimination. Accordingly, a discovery ruling should not be framed so narrowly that it forecloses access to evidence that may bear on comparator treatment, selective enforcement, pretext, or a convincing mosaic of intentional discrimination.

While courts retain discretion to manage discovery efficiently, that discretion is not a license to impose premature evidentiary barriers. In *Chudasama v. Mazda Motor Corp.,* the Eleventh Circuit emphasized the importance of judicial control over discovery, particularly where claims may be legally deficient. But *Chudasama* does not authorize courts to restrict discovery where claims are viable and the evidence sought is central to proving them. Proper discovery management ensures efficiency; it does not justify foreclosing access to relevant evidence necessary to establish discriminatory intent.

This motion therefore addresses a sequencing error where a merits-stage comparator standard under *Lewis* is being invoked to restrict discovery when that must precede that determination necessitating clarification and reconsideration to ensure that the scope of discovery reflects a fully developed understanding of the issues and avoids prejudice to Plaintiff at later stages of the litigation.

## ARGUMENT

### IV. Clarification is Necessary Because the Present Ruling is Ambiguous as to Scope

Plaintiff cannot tell from the oral ruling whether the Court meant only that certain categories had not yet been shown to be legally sufficient comparators under *Lewis*, or whether the Court meant to bar discovery into those categories entirely. That ambiguity matters because a category that is not yet a proven comparator may still be discoverable and probative as comparator evidence, selective-enforcement evidence, pretext evidence, pattern evidence, institutional-behavior evidence, or convincing-mosaic evidence. As the Eleventh Circuit has made clear, a plaintiff may rely on a "convincing mosaic of circumstantial evidence" rather than strict comparator proof alone. See *Smith*, 644 F.3d 1321, 1328 (11th Cir. 2011). The court reaffirmed that the ultimate question is discriminatory intent, not rigid comparator identity. See also *Tynes*, 88 F.4th 939 (11th Cir. 2023).

Plaintiff therefore respectfully requests clarification that discovery into these categories is not foreclosed merely because comparator status has not yet been established. This request is intended to prevent Defendant from treating an oral observation about comparator sufficiency as a broad shield against discovery relevance.

## V.    Reconsideration is Warranted Because the Exclusion Rests on A Premature and Unduly Narrow Comparator Determination

The disputed discovery categories identified above are material because they bear directly on who the decision-makers were, what discretion existed, whether process was provided, whether immigration-sensitive continuity was protected, whether exceptions were granted, and whether Plaintiff alone was denied warnings, hearings, accommodations, and status-preserving efforts. This is particularly important because Defendant's own communications establish not only that policy-compliant alternatives were available and expressly considered, including whether to take 'extraordinary steps' or provide accommodations, but also that the decision-makers were contemporaneously aware of the concrete academic, immigration, and professional consequences of the course ultimately chosen. See EMORY2251–2252. At the same time, the record reflects that Plaintiff was not afforded recourse to the Conduct Court framework contemplated by the governing code (EMORY2855), which provides a formal mechanism for contesting sanctions and obtaining institutional review. Nor was Plaintiff's objections and disputes ever processed through the Law School's mandatory Student Complaint Procedure (EMORY2539), which requires written complaint intake, investigation within defined timeframes, communication of findings, and the maintenance of a written record.

These facts demonstrate not merely the existence of discretion, but the bypassing of established procedures designed to govern disputes, ensure review, and create an accountable record of decision-making. Where formal procedures existed but were not invoked, while alternative discretionary options were simultaneously considered and rejected, the resulting decision cannot be characterized as a neutral or routine application of policy. Discovery into how those same procedures and discretionary mechanisms were applied to other students is therefore directly relevant under Rule 26(b)(1), irrespective of whether those students ultimately qualify as strict comparators under *Lewis*.

## VI. Each Excluded Category is Relevant

To the extent Defendant relied on unsworn representations of counsel—such as generalized assertions regarding immigration processes or comparator outcomes such statements do not constitute evidence and cannot form the basis for limiting discovery. See Fed. R. Evid. 602, 802. Discovery determinations must be grounded in the potential relevance of admissible evidence, not unsupported attorney argument.

### A. Chinese Male LLM F1 Students Accused of Cheating in FAC ¶ 36(b)

Plaintiff alleges that the Chinese male LLM F-1 students referenced in FAC ¶ 36(b) were accused of serious academic misconduct yet were permitted to maintain status and graduate on time rather than lose status and leave the country.

Comparators are not required to be identical in every factual detail. See *Lewis,* 918 F.3d at 1227. Therefore, even if the Court ultimately concludes that the type of misconduct differs in ways relevant to direct comparator weight, this evidence remains highly relevant because it involves the same institution, overlapping actors, the same general period, immigration-sensitive circumstances, and extraordinary flexibility afforded. Further, it is also highly relevant as to whether Defendant exercised immigration-protective intervention, discretionary leniency, and academic continuity measures for these, and other foreign LLM students while refusing comparable flexibility for Plaintiff. The significance of this category is not limited to a one-to-one comparator theory. It bears on discretionary capacity, immigration-sensitive accommodations, pattern, and selective enforcement.

## B. The white / non-black male F1 LLM comparator in FAC ¶ 36(c)

This category remains important notwithstanding Plaintiff's recently filed court-ordered brief on Plaintiff's Second Request for Production No. 30. That brief addressed Request No. 30 specifically. This motion addresses the broader legal error of treating comparator sufficiency as a categorical discovery bar as it relates to other students, aforementioned. This category remains important notwithstanding Plaintiff's recently filed brief regarding Request No. 30. The FAC ¶ 36(c) evidence involves the same institution, overlapping actors, the same general period, immigration-sensitive circumstances, and extraordinary flexibility afforded

to another foreign LLM student. Public filings in the Jane Doe litigation allege that the assailant was a foreign male LLM student during the same period, that Brokaw testified she had 'extended quite a bit of accommodation and stretched some of our policies' for him, and that Defendant 'worked very hard' to let him go home mid-semester, complete work remotely, permitting him to take exams out of the country without complications, and stay on track to graduate, while Ms. Doe was denied similar accommodations for months and told she was asking for "an extraordinary and exceptional occurrence." Furthermore, even if the Court ultimately does not treat the assailant as a strict *Lewis* comparator, the evidence remains material as circumstantial proof of pretext, selective enforcement, and a convincing mosaic.

**C. Newly Discovered Undocumented Enrolled Students and Visa-holder Students Whose I-20 and SEVIS Terminations were Challenged or Reversed with Defendant's Assistance** [This category corresponds to Plaintiff's Third Requests for Production Nos. 1-5, and Interrogatories Nos. 1-5]

Plaintiff brought to the Court's attention newly discovered evidence concerning Defendant's treatment of undocumented students and visa-holding students whose I-20 and SEVIS records were allegedly terminated by the government based on accusations of criminal activity, but whose status-related consequences were directly challenged, mitigated, or reversed with Defendant's assistance. Although undocumented students may not be strict SEVIS comparators, does not make the category irrelevant. Evidence that Defendant enrolled

undocumented students, paid their tuition, and supported their continued studies while insisting that nothing could be done for Plaintiff tends to show institutional flexibility, tolerance of rule bending, and willingness to protect some status-vulnerable students but not Plaintiff. That is probative of motive, discretion, and pretext even if not ultimately treated as direct *Lewis* comparator proof.

As it concerns other identified visa-holding students but for whom Defendant undertook affirmative efforts to restore, reverse, preserve, or litigate to protect status, this category is highly probative because it involves visa-holding students, immigration-sensitive consequences, and institutional intervention at the precise point where Plaintiff alleges Defendant refused any comparable assistance. Even if the Court does not treat these students as strict comparators on the merits, they are plainly discoverable as evidence of discretionary capacity, immigration-protective practice, selective enforcement, and a convincing mosaic of intentional discrimination. At minimum, this evidence is discoverable as related circumstantial evidence and related pattern evidence, even if the Court later limits what may be argued as direct comparator evidence.

### D. Domestic Students Withdrawn from the Same Mandatory Contracts Course

As it concerns domestic students withdrawn from the same mandatory contracts course under the same professor's policy were given off-cycle exams, retakes, hearings, or some route to remain on track, that evidence would go directly

to material similarity, different outcomes, and pretext. Discovery should not be cut off before Plaintiff can test that category.

## VII. Defendant's Exercise of Immigration-related Discretion Links the Comparator Categories and Confirms Discoverability

The comparator categories at issue are not isolated; they are unified by the fact that the Defendant controls the very mechanisms that led to the immigration consequences endured by Plaintiff, but not other enrolled students, through its designated school officials (DSO) and ISSS functions for which the Defendant has a long history of certification and management on behalf of the DHS. For visa holders student, lawful presence is not determined solely by academic enrollment but depends on the maintenance of an active SEVIS record and valid Form I-20 administered through the institution's designated officials.

Defendant's actions in academic or disciplinary contexts knowingly carry immediate and severe immigration consequences for international students. That framework is essential to understanding why the requested discovery is relevant.

Plaintiff's evidence across multiple categories indicates that Defendant possessed and exercised discretion in how immigration-sensitive outcomes were handled. Plaintiff's allegations involving Chinese LLM students accused of cheating allegedly avoided status-terminating consequences and were permitted to complete their studies; the FAC ¶ 36(c) comparator allegedly received accommodations that preserved academic continuity despite departure from the United States;

undocumented students were allegedly enrolled and supported notwithstanding immigration irregularities; and, more recently, Defendant has taken affirmative steps to challenge or reverse SEVIS terminations affecting other students.

Plaintiff's theory does not depend on labels or characterizations of institutional policy, but on evidence that Defendant exercised flexibility, discretion, or status-preserving practices for certain categories of students, including undocumented and visa-holding students, while denying comparable consideration to Plaintiff. Plaintiff does not rely on later events to establish Defendant's knowledge at the time of Plaintiff's removal. Rather, those events demonstrate Defendant's capacity, practice, and willingness to intervene in immigration-sensitive situations where it chooses to do so. When considered together with Defendant's internal communications in this case, reflecting discussions of "extraordinary steps," whether Plaintiff "merits" such treatment, and concerns about "gaming the system", this evidence supports a reasonable inference that Defendant exercised discretionary authority selectively. The relevance of these comparator categories therefore does not depend solely on whether each category ultimately satisfies *Lewis*. The categories collectively illuminate the existence of discretionary authority, the identity of decision-makers, the range of available accommodations, and whether Defendant applied those tools unequally. That evidence is directly probative of

pretext, selective enforcement, and a convincing mosaic of intentional discrimination.

## VIII. The Handbook, Complaint Procedure, and Honor Code Reinforce The Need for This Discovery

Defendant's formal materials show that hearings, witness testimony, written findings, written records, appeal rights, and structured procedures existed. The Student Complaint Procedure requires investigation, communication of findings, appeal rights, and maintenance of a written record. The Honor Code and related procedures likewise contemplate hearings, evidence, decisions, and appeals.

Where Defendant's formal written materials contemplate process and recordkeeping, the records showing what process other students actually received are plainly relevant to whether Plaintiff alone was denied equivalent process.

## IX. Remedial Doctrine and Later Events Section

On March 09, 2026, at the hearing, the Court also suggested that later events may be irrelevant as subsequent remedial matters. But Plaintiff's theory is not confined to a closed past event. Plaintiff alleges an ongoing course of discriminatory treatment that includes withholding, demands for payment, refusal to refund, policy changes, course restructuring, and continuing adverse effects flowing from the withdrawal and its aftermath. Plaintiff does not rely on later conduct solely to prove antecedent wrongdoing. Rather, such evidence is probative of Defendant's institutional practices, its exercise of discretion, its pattern of granting or denying

accommodations, and whether its stated reasons in this case are pretextual. Admissible under Federal Rule of Evidence 406. See *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1285–86 (11th Cir. 2008); *Sprint/United Mgmt. Co. v. Mendelsohn,* 552 U.S. 379, 388 (2008).

Plaintiff is not offering later events solely to prove antecedent fault. Plaintiff contends that later changed policies, withholding, billing demands, refusal to refund, course restructuring, and other post-withdrawal conduct are relevant to continuing harm, institutional practice, pretext, and the ongoing discriminatory consequences of the withdrawal decision. At the discovery stage, those categories should not be excluded wholesale.

## X.    Clarification is also Necessary Regarding Restricting Discovery to Emory School of Law Alone

Plaintiff recognizes that some direct comparator questions may ultimately focus on the law school. But for university-wide immigration-related practices, ISSS/DSO administration, SEVIS reporting, undocumented-student treatment, and institutional intervention with government agencies, the relevant conduct may occur at the university level rather than solely within the law school. To the extent the March 9, 2026 ruling may be read to exclude university-level evidence categorically, Plaintiff respectfully seeks clarification and reconsideration. At this discovery stage, university-wide evidence is at minimum relevant as related circumstantial evidence and related pattern evidence, particularly where Plaintiff alleges that the same

institution exercised immigration-sensitive discretion differently across student categories.

The requested discovery is not overbroad merely because it extends beyond Emory School of Law. Immigration status administration, SEVIS reporting, and ISSS decision-making are inherently centralized, institution-wide functions that apply across all schools and programs. The relevant decision-making authority, therefore, does not reside solely within the Law School, but at the university level.

### XI.    Clarification is also Necessary Regarding Plaintiff's own Academic and Immigration Records and Related Academic Materials (Plaintiff's Second Request for Production Nos. 26 and 9)

Plaintiff further respectfully seeks clarification regarding the Court's oral ruling as it relates to Plaintiff's Second Requests for Production Nos. 26 and 9, which seek Plaintiff's own academic and immigration records, as well as records relating to Plaintiff's academic performance, including her Spring 2019 Property examination materials. At the March 9, 2026 hearing, the Court indicated that Defendant need not produce Plaintiff's academic records based on a concern that Plaintiff might use such production as a "backdoor" means to obtain graduation-related materials. Plaintiff respectfully submits that this reflects a misapprehension of both the scope and purpose of these requests. These requests do not seek graduation certificates or collateral relief. They seek the underlying academic and immigration records maintained by Defendant, including records directly relied

upon by Defendant's decision-makers in determining whether Plaintiff would receive accommodations or exceptions.

Critically, Defendant's own internal communications confirm that Plaintiff's academic record was expressly considered as part of the decision-making process. In EMORY2246, Defendant's personnel discussed whether Plaintiff "merits" an extraordinary exception "given her record here." That statement demonstrates that Plaintiff's academic record was not merely background information, but a factor affirmatively relied upon in determining whether to grant or deny discretionary relief. Where Defendant relies on Plaintiff's academic record as a basis for denying accommodations or exceptions, fundamental fairness and Rule 26(b)(1) require that Plaintiff be permitted to obtain and examine that same record in discovery.

Similarly, Request No. 9 seeks Plaintiff's examination materials, grading records, and related communications for the Spring 2019 Property course. Those materials are directly relevant to the academic consequences of Defendant's actions, including the impact of Plaintiff's inability to sit the mid-term examination and the resulting performance outcomes. They also bear on whether grading and evaluation were conducted fairly and consistently.

These materials therefore constitute relevant evidence of causation, pretext, and academic impact, and are properly discoverable under Rule 26(b)(1) and Rule 34(a). Defendant's refusal to produce Plaintiff's own academic records and

examination materials based on a speculative concern regarding potential use is not a recognized basis for withholding otherwise discoverable material.

Plaintiff respectfully seeks clarification that Plaintiff's Second Requests for Production Nos. 26 and 9 are not foreclosed, and reconsideration to the extent the Court's ruling may be interpreted as categorically denying production of Plaintiff's own academic and examination records.

## XII.  Clarification is Also Needed Regarding Depositions

Plaintiff further seeks clarification whether the Court intended to foreclose depositions. Depositions were not the subject of any of the listed motions at the March 9, 2026 hearing, yet the Court stated in passing that Plaintiff did not need depositions. Plaintiff respectfully submits that depositions are necessary to test decision-maker overlap, hidden criteria, unwritten practices, comparator treatment, and the precise role of deans, ISSS personnel, registrar personnel, and OGC personnel.

If the Court intended only to express a preliminary view, clarification will avoid confusion. If the Court intended to prohibit or materially limit depositions, Plaintiff respectfully requests reconsideration because such a limitation would materially impair Plaintiff's ability to prove discrimination and pretext.

## XIII. Targeted Personnel-related Discovery Should Not be Excluded Categorically

Plaintiff does not seek wholesale disclosure of entire personnel files. Plaintiff instead seeks targeted discovery into complaints, investigations, findings, discipline, corrective actions, and similar materials involving the relevant decision-makers to the extent those materials bear on bias, retaliation, credibility, discriminatory practice, or involvement in Plaintiff's matter. It has recently come to the Plaintiff's attention that the Defendant was involved with such investigations, corrective actions, etc.

A categorical exclusion of all personnel-related materials is too broad if it prevents discovery of otherwise relevant complaint or disciplinary information concerning the very officials whose motives and conduct are directly at issue. Narrowing, and protective-order treatment are available tools. A blanket prohibition is not the least restrictive means of handling such materials.

## XIV. Denial of this Discovery would Create Manifest Prejudice

Without this discovery, as aforementioned, Defendant can argue that Plaintiff lacks comparators while simultaneously preventing Plaintiff from discovering them. That is exactly the kind of unfairness Rule 56 doctrine is designed to prevent. The same practical concern underlies the Supreme Court's observation *in Celotex* that '[a]ny potential problem with such premature motions can be adequately dealt with' where the nonmovant has not had an opportunity for full discovery. *Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986)

The prejudice is concrete. Without these records and depositions, Plaintiff cannot test who approved comparator accommodations, whether ISSS, Title IX, deans, registrar personnel, or OGC personnel participated, whether extraordinary exceptions were granted, whether out-of-country exams or remote completion were authorized, whether prepared statements, advance questions, or support services were provided, whether complaints or discipline existed concerning relevant decision-makers, and whether Defendant's explanation in this case is genuine or pretextual.

The requested discovery is narrowly tailored and proportional to the needs of the case, and its denial would disproportionately impair Plaintiff's ability to prove her claims while leaving Defendant free to rely on the absence of evidence that Plaintiff has been prevented from obtaining. A discovery ruling that conditions access to comparator evidence, be it direct, circumstantial or pattern evidence, on prior proof of comparator sufficiency collapses the distinction between Rule 26 and Rule 56 and effectively requires Plaintiff to prove her case before she is permitted to obtain the evidence necessary to do so.

The prejudice is heightened because the Court has emphasized the need for evidentiary support for Plaintiff's allegations under threat of Rule 11 sanctions. Restricting access to discovery necessary to obtain that evidence, while

simultaneously requiring evidentiary substantiation, creates the type of structural unfairness that clarification and reconsideration are designed to prevent.

## XV.    Reconsideration is Appropriate and Respectful of the Court's Role

Plaintiff recognizes that motions for reconsideration are disfavored if used merely to reargue prior positions. This motion does not do that. It respectfully asks the Court to clarify and, if necessary, revise the scope of an interlocutory discovery ruling so that discovery remains aligned with Rule 26, Rule 30, Rule 54(b), and Eleventh Circuit discrimination law.

This is an especially appropriate use of reconsideration because the issues are narrow, case-management oriented, and capable of materially affecting the fairness of later dispositive proceedings. Plaintiff does not ask the Court to decide that every disputed category is a valid comparator as a matter of law. Plaintiff asks only that the Court not allow Defendant to turn a merits sufficiency question into a categorical discovery bar and not allow offhand hearing comments to be treated as unexplained prohibitions on core discovery tools such as depositions.

While the Court retains broad discretion over discovery matters, that discretion is most effectively exercised where the scope and intent of a ruling are clearly understood. Where an oral ruling is susceptible to materially different interpretations, clarification serves both the Court and the parties by ensuring consistent application.

## CONCLUSION

Plaintiff's theory does not depend on labels or characterizations of institutional policy, but on evidence that Defendant exercised flexibility, discretion, or status-preserving practices for certain categories of students, including undocumented and visa-holding students, while denying comparable consideration to Plaintiff.

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Clarify that discovery into comparator-related, related circumstantial, and related pattern evidence remains available under Rule 26 even where ultimate comparator sufficiency under Lewis has not yet been established;

2. Reconsider any ruling foreclosing discovery into the Chinese LLM cheating category, the FAC ¶ 36(c) foreign male LLM category, newly discovered undocumented-student and visa-holder evidence, and domestic contracts-course withdrawal evidence;

3. Clarify whether the Court intended to foreclose depositions and, if so, reconsider that limitation to allow narrowly tailored depositions of relevant decision-makers and custodians;

4. Permit narrowly tailored discovery into complaints, investigations, findings, discipline, and corrective materials involving relevant decision-makers, rather than categorically excluding all personnel-related materials;

5. Clarify that Plaintiff's own academic record, immigration file, and related academic materials, including Plaintiff's Second Requests for Production Nos. 26 and 9, are not categorically barred;

6. Clarify that the Court's March 9, 2026 oral ruling was not intended to be interpreted as a categorical bar to discovery into the identified categories;

7. Clarify and reconsider any limitation excluding discovery into university-wide immigration-related practices, including ISSS/DSO administration, SEVIS reporting, undocumented-student treatment, and institutional intervention with government agencies;

8. Direct Defendant to produce responsive materials, subject to the protective order and the Court's existing production timeline (Doc. 195); and

9. Grant such other and further relief as the Court deems just and proper.

Plaintiff further respectfully requests clarification as to the scope and effect of the Court's March 9, 2026 minute entry so that the parties have a clear and consistent understanding of the discovery limitations, if any, imposed by the Court. Plaintiff raises these issues to ensure that the discovery ruling is clearly defined on the record and to preserve all rights with respect to appellate review following final judgment.

Respectfully submitted this 6th day of April, 2026.

/s/ Jenny Lindsay
Jenny Lindsay Pro se

10595 Plantation Bridge Drive
Alpharetta, GA 30022 7707572811
Lindsayjenny100@gmail.com

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

APR 0 6 2026

KEVIN P. WEIMER, Clerk
By_____ Deputy Clerk

JENNY LINDSAY,                      )
    Plaintiff,                       )
                                     )
v                                   )    CASE NO I:22-CV-0886-WMR
                                     )
EMORY UNIVERSITY,                   )
    Defendant.                       )

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

Pursuant to Local Rule 7.1(D), the undersigned hereby certifies that the foregoing

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF COMBINED MOTION**

**FOR CLARIFICATION AND RECONSIDERATION OF**

**INTERLOCUTORY DISCOVERY RULING** was prepared using a font type of

Times New Roman and a point size of 14 in accordance with Local Rule 5.1 of the

Northern District of Georgia.

    Respectfully submitted this 6th day of April, 2026.

                             /s/ Jenny Lindsay
                             Jenny Lindsay Pro se

10595 Plantation Bridge Drive
ALPHARETTA GA 30022 7707572811
Lindsayjenny100@gmail.com

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 0 6 2026

KEVIN P. WEIMER, Clerk
By: Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

JENNY LINDSAY,                  )
    Plaintiff,              )
v                               )          CASE NO I:22-CV-0886-WMR
                                )
EMORY UNIVERSITY,               )
    Defendant.              )

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the above and foregoing **PLAINTIFF'S MEMORANDUM IN SUPPORT OF COMBINED MOTION FOR CLARIFICATION AND RECONSIDERATION OF INTERLOCUTORY DISCOVERY RULING** served on the following through the methods indicated below.

Hall, Gilligan, Roberts & Shanlever LLP for the attention of Rebecca W. Shanlever, 3340 Peachtree Rd NE, Suite 1900, Atlanta, GA 30326, (served via postal delivery)

    Respectfully submitted this 6th day of April, 2026.

/s/ Jenny Lindsay
Jenny Lindsay Pro se

10595 Plantation Bridge Drive
ALPHARETTA GA 30022 7707572811
Lindsayjenny100@gmail.com